### William A. ORTMAN, Plaintiff,

### v.

### Philip THOMAS, John Van Bolt, Michigan National Corporation, Robert Mylod, David Vigna, Douglas Bernstein, Comerica Bank, Lynn Allen, Gerald Poisson, Donald Slavin, John Ronayne, III, Chester Kasiborski, Jr., Kasiborski, Ronayne, and Flaska, Michigan Attor-

ney Discipline Board, Michigan Attorney Grievance Commission, George Bushnell, Jr., David Breck, Frederick Harris, Anna Diggs Taylor, Alan Falk, John Doe(s), and United States of America, Defendants.

Civ. A. No. 94–75046.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 7, 1995.

William A. Ortman, Farmington, MI, pro se.

Earl R. Jacobs, Barry H. Somlyo, Jacobs, James, Klarr & Somlyo, Southfield, MI, for Frederick Harris.

Mary M. Ross, Plunkett & Cooney, Detroit, MI, for David Breck.

Margaret A. Nelson, Michigan Dept. of Atty. Gen., Tort Defense Div., Lansing, MI, for George E. Bushnell.

Jane Shallal, Asst. U.S. Atty., U.S. Attorney's Office, Detroit, MI, for MI Atty. Grievance.

John J. Ronayne, III, Kasiborski, Ronayne & Flaska, Detroit, MI, for Kasiborski, Ronayne & Flaska.

Kurt M. Carlson, Michael D. Bowtell, Comerica, Inc., Legal Dept., Detroit, MI, for Comerica Bank.

David J. Vigna, Douglas C. Bornstein, Michigan Nat. Corp., Legal Dept., Farmington Hills, MI, for Douglas Bernstein.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Plaintiff William Ortman is seeking recovery of damages and other relief from some twenty-two defendants based upon various related and unrelated alleged misdeeds. In nine separate motions, all twenty-two defendants are seeking dismissal and/or summary judgment. Plaintiff has responded to only four of the nine motions filed by defendants. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. Jan. 1, 1992), the court will dispense with oral argument and decide the motions based upon the briefs submitted by the parties. For the reasons discussed below, the court will grant defendants' motions and dismiss plaintiff's complaint.

### I. Background

Plaintiff is an attorney who is representing himself in this case involving wide-ranging conspiracies and decades old litigation. The defendants and claims cited in plaintiff's complaint can be divided roughly into two

groups, although plaintiff contends that the groups are connected. The first group of claims concerns two formal grievance complaints filed against plaintiff that until recently were pending before the Michigan Attorney Discipline Board. The second group of claims relate to a 1978 lawsuit filed by plaintiff against Michigan National Corporation which was eventually resolved in 1990 with a dismissal of plaintiff's claims and an award of $26,000 in sanctions against plaintiff for frivolous and vexatious litigation. The court will examine each of these two groups of claims in turn.

In July 1993, defendant Philip Thomas filed two complaints against plaintiff with the Michigan Attorney Discipline Board ("ADB"), also a defendant in this case. The complaints alleged that plaintiff engaged in various attorney misconduct. Thomas is the administrator of defendant Michigan Attorney Grievance Commission ("AGC"), the state agency responsible for investigating and prosecuting complaints brought against members of the Michigan Bar. An ADB hearing panel has already found that plaintiff has engaged in professional misconduct. As a sanction, the panel ordered plaintiff's disbarment, and denied plaintiff's request for a stay of this sanction pending his appeal to the full ADB. The ADB is an adjudicatory arm of the Michigan Supreme Court and determines discipline complaints brought against Michigan attorneys. Final decisions of the full ADB are subject to discretionary review by the Michigan Supreme Court.

In his complaint, plaintiff is seeking money damages, declaratory relief, and an injunction against the AGC and ADB under 42 U.S.C. § 1983 based upon alleged constitutional violations of his rights under the First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. Plaintiff contends that the ADB and AGC are "terrorist societies" that are attempting to take away his right to practice law without providing the constitutional guarantees to which he is entitled. As part of this claim, plaintiff is also seeking relief from defendants John VanBolt, the Executive Director of the ADB, and George Bushnell, Jr., a member of the same law firm as a member of the ADB hearing panel that reviewed plaintiff's case.

Somewhat related to the attorney discipline portion of plaintiff's complaint, are the claims brought against defendants Anna Diggs Taylor and the United States of America. Taylor is a United States District Judge for the Eastern District of Michigan. She presided over a lawsuit filed by plaintiff in 1991 against almost sixty defendants, including three Michigan counties, two cities, several law firms, each of the members of the Michigan Supreme Court, and various lower state courts. *Ortman v. Michigan,* No. 91–74299 (E.D.Mich.). Judge Taylor granted the defendants' motion for summary judgment and awarded Rule 11 sanctions of $40,000 in attorney fees and costs to all defendants. The Sixth Circuit affirmed Judge Taylor's decision, and found that sanctions were proper given the "vexatious nature and impropriety of the entire litigation." *Ortman v. Michigan,* No. 92–2177, 1994 WL 12230, at *4, 1994 U.S.App. LEXIS 969, at *11 (6th Cir. Jan. 18, 1994).

In the instant complaint, plaintiff contends that Judge Taylor violated various constitutional guarantees through her rulings in the prior litigation. In addition, plaintiff has made various claims concerning Judge Taylor's testimony before the ADB on May 25, 1994 concerning the disciplinary complaints pending against plaintiff. He contends that by appearing and testifying, Judge Taylor was part of a wide-ranging conspiracy to deprive him of his right to practice law. Furthermore, plaintiff claims that Judge Taylor instructed two deputy United States marshals, who were present at the hearing, to arrest him. Plaintiff alleges that the marshals accosted him, conducted a body search, and made various physical threats against him at the ADB hearing on May 25, 1994. Plaintiff alleges that the marshals said that they had accosted him because of reports of a death threat against Judge Taylor by plaintiff. Based on these events, plaintiff is seeking recovery of damages under 42 U.S.C. § 1983 and state law claims of false arrest and imprisonment against Judge Taylor. On May 26, 1995, the United States was substi-

tuted for Judge Taylor relative to plaintiff's state tort claims.

The second major portion of plaintiff's complaint relates to a lawsuit that he filed in 1978. This lawsuit led to one of the two attorney discipline complaints filed by defendants Thomas and the AGC against plaintiff. The attorney discipline complaint regarding the 1978 lawsuit provides the connection between the two major portions of plaintiff's claims, and plaintiff alleges an over-arching conspiracy between the lawyers, parties, judges, and court personnel involved in the 1978 case and the AGC and ADB parties.

On September 26, 1978, plaintiff filed an action in the 47th District Court of Michigan claiming damages from two of his clients and Michigan National Corporation, a defendant in this action. The lawsuit resulted when plaintiff received a check from his two clients, issued on an account with Michigan National, for legal services rendered by plaintiff. The clients requested that Michigan National stop payment on the check, and Michigan National complied. Plaintiff then sued, alleging that Michigan National and his clients had conspired to deprive him of his attorney fees.

In the course of the litigation, two default judgments were separately entered against the defendants in the state court action. After many years of procedural wrangling and various delays, on July 21, 1989, 47th District Judge Frederick Harris granted Michigan National's motion to set aside a November 2, 1979 default judgment. Judge Harris then dismissed plaintiff's lawsuit with prejudice on October 3, 1989 after plaintiff repeatedly failed to appear for his deposition. Judge Harris is now a defendant in this action based upon his alleged violations of 42 U.S.C. § 1983.

Plaintiff then appealed the dismissal of his suit to the Oakland County Circuit Court. In addition, while his appeal was pending, plaintiff filed a second action against Michigan National in the Oakland County Circuit Court for the purpose of renewing the 1979 default judgment. In two separate orders, Oakland County Circuit Judge David Breck affirmed Judge Harris's dismissal of the 47th District Court action and dismissed plaintiff's

second circuit court action. Judge Breck is now a defendant in this action based upon various alleged unconstitutional rulings, and his alleged participation in the conspiracy to deprive plaintiff of his right to practice law.

Plaintiff appealed Judge Breck's orders to the Michigan Court of Appeals. The court of appeals affirmed Judge Breck and found that plaintiff's conduct was "vexatious and calculated to do nothing more than harass and intimidate the defendants." *Ortman v. Michigan Nat'l Corp.*, No. 133075 (Mich.App. March 30, 1993) (slip opinion). The court then remanded the action for a determination of appropriate sanctions. On remand, Judge Breck sanctioned plaintiff and awarded Michigan National $26,539.26 in fees and expenses on April 20, 1994.

On December 21, 1994, Michigan National was able to recoup $1,412 from plaintiff's bank account as a result of a garnishment served on Comerica Bank. Because it turned over the garnished funds to Michigan National, Comerica is now a defendant in this suit based upon plaintiff's allegation that it violated his constitutional rights under color of state law in violation of 42 U.S.C. § 1983.

As part of his claim against Michigan National, plaintiff has named as defendants several individuals associated with the bank. Defendant Robert Mylod is the chairman of the board of Michigan National. Defendants David Vigna and Douglas Bernstein are attorneys employed by Michigan National who at some point worked on the 1978 Ortman litigation. Michigan National and the related defendants are accused by plaintiff of violations of section 1983, malicious prosecution, abuse of process, and fraud. Plaintiff claims that this conduct by the Michigan National defendants was also part of a general "conspiracy" to harass plaintiff, take his money, and attack his livelihood.

Defendants John Ronayne, III; Chester Kasiborski, Jr.; and Kasiborski, Ronayne, and Flaska have also been sued by plaintiff in this action because of their relationship to Michigan National. Ronayne is an attorney who was retained by Michigan National to collect the attorney fees awarded by Judge Breck. Kasiborski, Ronayne, and Flaska is

Ronayne's law firm. Chester Kasiborski is a defendant in this action because he was appointed in July 1993 to serve on an ADB hearing panel in one of the pending discipline complaints against plaintiff. Upon being appointed, Kasiborski immediately learned that his law firm was representing Michigan National against plaintiff in the Oakland County litigation. As a result, Kasiborski sent a letter to the ADB disqualifying himself from the panel. Plaintiff is suing Ronayne, Kasiborski, and their law firm for violations of section 1983 because of their connection to the attorney discipline complaints pending against him.

The history of the $1,412 garnishment served on Comerica Bank also served to bring several other defendants into this lawsuit. Michigan National's attorney, defendant Bernstein, filed a writ of garnishment based upon Judge Breck's award of sanctions with the Oakland County Circuit Court Clerk, Lynn Allen, on October 17, 1994. Allen and her employees served the writ on Comerica for the $1,412 that was in plaintiff's bank account, as well as a $45 fee for the garnishment. Allen and two Oakland County employees involved in the garnishment process, Gerald Poisson and Donald Slavin, are now defendants in this case. Plaintiff claims that Allen, Poisson, and Slavin authorized and ratified the bad acts committed by the Michigan National defendants, as well as the fraudulent judgments entered by the Oakland County Circuit Court, when they assisted in the service of the writs of garnishment. Plaintiff contends that he informed Bernstein that no judgment had ever been issued against him, and that Michigan National had never filed suit against him. On this basis, plaintiff claims that a fraudulent writ was issued and served by Allen and her subordinates.

The last defendant named in plaintiff's action is Allan Falk. Falk is a lawyer and the commissioner of the Michigan Court of Appeals. Plaintiff only mentions Falk in paragraph 30 of his complaint. In that paragraph, plaintiff contends that Falk filed a grievance against him with the AGC. In addition, plaintiff complains that Falk exercised prejudice and bias to hurt his case against Michigan National since 1979 in plaintiff's various appearances before the Michigan Court of Appeals. It appears that plaintiff also names Falk as a participant in the alleged wider conspiracy to deny him his right to practice law. In his motion to dismiss and/or for summary judgment, Falk admits that he filed a grievance with the AGC against plaintiff on April 8, 1981, but that he has had no contact with plaintiff since August 18, 1982 when the AGC administrator admonished plaintiff based upon Falk's grievance.

## II. Analysis

In response to plaintiff's lawsuit, all twenty-two defendants have filed motions to dismiss and/or for summary judgment. Plaintiff has only responded to four of the nine motions filed by defendants.[1] In this memorandum opinion, the court will address each of the motions filed by the defendants. Various defendants have also filed motions for Rule 11 sanctions and for a permanent injunction enjoining plaintiff from filing any future civil lawsuits based upon any of the legal or factual claims alleged in his complaint. The court will address these motions in a later order.

After careful consideration and a review of all the pleadings in this matter, the court must conclude that a large portion of plaintiff's complaint is utterly frivolous and without merit. It is quite apparent to the court that much of plaintiff's lawsuit was filed with the intent to harass and punish various per-

1. Plaintiff has not responded to motions to dismiss and/or for summary judgment filed by the following defendants: (1) defendant Falk's April 26, 1995 motion; (2) defendants Taylor and the United States' May 31, 1995 motion; (3) defendants VanBolt, Bushnell, and ADB's June 20, 1995 motion; (4) defendant Harris's May 23, 1995 motion; and (5) defendants Allen, Poisson, Slavin, and Breck's May 10, 1995 motion. Ac-

cording to Local Rule 7.1(c) (E.D.Mich. Nov. 7, 1994), a "respondent opposing a motion shall file a response."

Under these circumstances, as an alternative to the reasons set forth in this memorandum opinion, the court will dismiss all of plaintiff's claims against these defendants who have filed motions to dismiss, but whose motions were not opposed by plaintiff.

ceived enemies and opposing litigants. The extent of the conspiracies alleged by plaintiff in this matter is rivaled only by the plaintiff's claims presented in *Ortman v. Michigan*, No. 92–2177, 1994 WL 12230, 1994 U.S.App. LEXIS 969 (6th Cir. Jan. 18, 1994). In that case, the Sixth Circuit noted that plaintiff's brief contained a

> collection of accusations and bizarre tales against Michigan's entire court system, its Constitution, various judges and attorneys, entire law firms, and several individuals. These accusations cover a broad scope and include such crimes as bribery, extortion, false arrest, false imprisonment, neglect, death threats, racketeering, fraud, judicial corruption, illegal search and seizure, the "buying" of judges, judicial retaliation, harassment by police, and a wide-ranging conspiracy against [Ortman and his wife].

*Id.*, 1994 WL 12230, at *3, at *10–11. By comparison, plaintiff's allegations in this case appear slightly more restrained, but are still well beyond the bounds of frivolity. A frivolity magnified by the fact that plaintiff is an attorney, although now disbarred. Below, the court will examine each of the motions filed by the various defendants.

## A. The Judicial Defendants

Plaintiff is suing three judges before whom he has appeared in cases that he filed based upon rulings the judges made in the course of litigation. Plaintiff is claiming damages for violations of 42 U.S.C. § 1983 from Judges Harris, Breck, and Taylor. In addition, plaintiff is suing defendants Allen, Slavin, and Poisson, as employees of the Oakland County court system for their conduct in executing a writ of garnishment based upon a judgment entered by Judge Breck. On May 10, 1995, defendants Allen, Poisson,

Slavin, and Judge Breck filed a joint motion to dismiss and/or for summary judgment. Judge Harris filed a similar motion on May 23, 1995. On May 31, 1995, the federal defendants, including Judge Taylor, filed a motion to dismiss and/or for summary judgment as to all claims. Plaintiff has failed to respond to any of these three motions.

■■■ It is well settled that a judge is absolutely immune from a suit for money damages based upon judicial acts within the judge's jurisdiction. *See, e.g., Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Judges are not immune for claims based upon nonjudicial actions or judicial actions that are taken in the complete absence of jurisdiction. Similarly, absolute judicial immunity is available to court employees acting in an adjudicatory capacity or at a judge's direction. *See, e.g., Foster v. Walsh*, 864 F.2d 416 (6th Cir.1988). Nonjudicial officers whose official duties have an integral relationship with the judicial process are entitled to absolute immunity for their quasi-judicial conduct. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■■■ In this case, plaintiff is complaining about various rulings made by Judges Taylor, Breck, and Harris. The court finds that the rulings made by these judges were clearly judicial acts within their jurisdiction. As such, these judges are absolutely immune from plaintiff's suit. Judge Taylor, a federal judge, is even charged with violations of section 1983. Obviously, a section 1983 claim can only be brought for actions done under color of state law. For this reason alone, the claims against Judge Taylor based upon her rulings in plaintiff's prior lawsuit are frivolous.[2] Finally, defendant Allen is also im-

---

**2.** All of the claims against Judge Taylor and the United States are also problematic because of plaintiff's failure to properly effect service as required by Rule 4(i). As a result, the court will also dismiss plaintiff's claims against Judge Taylor and the United States due to insufficient service of process. Plaintiff's state law claims against the United States are also barred by sovereign immunity because of plaintiff's failure to follow the requirements of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680.

The court also finds that plaintiff's claims against Judge Taylor based upon his alleged arrest by federal marshals are without merit. Plaintiff has failed to respond or present any evidence opposing Judge Taylor's motion for summary judgment on these claims based upon her non-involvement and qualified immunity. *See Rizzo v. Goode*, 423 U.S. 362, 370–71, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976); *O'Hara v. Wigginton*, 24 F.3d 823, 826–27 (6th Cir.1994). As a result, the court will enter judgment in favor of Judge Taylor on these claims.

mune from suit based upon his conduct as the Oakland County Circuit Court Clerk in executing garnishments against plaintiff.[3]

## B. Michigan's Attorney Grievance System

Plaintiff is seeking damages and injunctive relief pursuant to 42 U.S.C. § 1983 from defendants AGC, ADB, Thomas, VanBolt, and Bushnell based upon ongoing proceedings concerning two attorney discipline complaints against plaintiff. Plaintiff contends that Michigan's attorney discipline system is unconstitutional, and that these defendants have conspired together to deprive him of his right to practice law in violation of his constitutional rights. Plaintiff alleges violations of his First, Second, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. On April 18, 1995, defendants Thomas and AGC filed a motion to dismiss and/or for summary judgment. Defendants ADB, Van-Bolt, and Bushnell filed a joint motion to dismiss and/or for summary judgment on June 20, 1995. Plaintiff has only filed a response to the motion presented by defendants Thomas and AGC.

Defendants contend that this court lacks subject matter jurisdiction to review a pending attorney disciplinary proceeding. Defendants urge the court to abstain from interfering with the conduct of an important state proceeding. Furthermore, defendants argue that even if the court had jurisdiction, they deserve summary judgment or dismissal because the Michigan attorney disciplinary system does not deny plaintiff his right to procedural due process. Defendants VanBolt and Bushnell contend that they deserve dismissal because plaintiff has failed to demonstrate their personal involvement in any of the alleged constitutional violations. Finally, defendants ADB and AGC contend that they are immune from suit in this matter under the Eleventh Amendment because they are agencies of the state.

In response, plaintiff claims that Michigan's attorney grievance system is unconsti-

tutional because it does not provide for adequate appellate review. Under Michigan court rules, an attorney who has been disciplined by the ADB may seek leave to appeal from the Michigan Supreme Court. Review is not automatic and is strictly discretionary. As a result, plaintiff argues that the abstention doctrine should not apply in this case because he does not have an adequate opportunity for review of any constitutional violations. Plaintiff also contends that the AGC and ADB are not arms of the state, but instead are merely voluntary associations of Michigan attorneys not protected by the Eleventh Amendment. Finally, plaintiff does not address defendants VanBolt and Bushnell's claims of non-involvement. The court will analyze defendants' motions below.

The United States Supreme Court has determined that the abstention doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) can apply to disciplinary proceedings brought by state bar associations against individual attorneys. *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). *Younger* abstention represents a "strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances," given the importance of the principles of federalism and comity. *Id.* at 431, 102 S.Ct. at 2521. In this case, plaintiff is seeking to enjoin the disciplinary proceedings which are pending against him. As a result, the court must address the issue of *Younger* abstention.

In order for *Younger* abstention to apply, the following three requirements must be satisfied: (1) the state proceedings sought to be enjoined must be ongoing; (2) the state proceedings must involve an important state interest; and (3) the state proceedings must afford the plaintiff an adequate opportunity to raise his constitutional claims. *See Parker v. Commonwealth of Kentucky, Bd. of Dentistry*, 818 F.2d 504, 508 (6th Cir.1987). There appears to be little doubt that the first

---

3. Plaintiff has also failed to provide any support to any claims he has alleged against defendants Poisson and Slavin. Without any indication from plaintiff as to the nature and basis for the claims against these two defendants, the court can only conclude that these claims should be dismissed.

two requirements have been satisfied in this case. In July 1995, an ADB hearing panel decided to disbar plaintiff. Plaintiff is now appealing this decision to the full ADB. After review by the ADB, plaintiff will then have an opportunity to seek leave to appeal any final decision to the Michigan Supreme Court. As a result, plaintiff is seeking to enjoin these ongoing disciplinary proceedings against him and to restore his bar status. It is also clear that Michigan has an important interest in assuring professional conduct of its licensed attorneys. *See Middlesex County Ethics Comm.*, 457 U.S. at 431, 102 S.Ct. at 2521.

As to the third requirement for *Younger* abstention, there appears to be a reasonable dispute between the parties as to whether plaintiff has an adequate opportunity to present his constitutional claims in the Michigan disciplinary proceedings. The ADB and AGC contend that discretionary review by the Michigan Supreme Court, as well as review by the attorneys who are members of the ADB panel reviewing plaintiff's case, is sufficient to assure plaintiff an opportunity to raise constitutional issues. Plaintiff, however, argues that a discretionary review of constitutional claims is not a review at all.

In *Fieger v. Thomas*, 872 F.Supp. 377, 380 (E.D.Mich.1994) (Borman, J.), the court held that abstention was not proper in a case challenging Michigan's attorney disciplinary system because of the discretionary nature of the appeal to the state supreme court. The court found that "the Michigan ADB procedures facing Plaintiff do not constitute adequate judicial proceedings to guarantee his right to procedural due process because there is no right to state court judicial review of the administrative proceedings at which Plaintiff can raise his constitutional claims" under Michigan Court Rule 9.122(A). *Id.* at 380. The court in *Fieger* relied upon the Sixth Circuit's decision in *Parker* which found that "for a federal court to abstain from realizing the merits of a case under *Younger*, it must be assured that there exists a definite opportunity for the federal plaintiff to raise his constitutional claims on direct state judicial review of the state administra-

tive proceedings." *Parker*, 818 F.2d at 509; *see also In re Grand Jury 89-4-72*, 932 F.2d 481, 487 (6th Cir.1991), *cert. denied*, 502 U.S. 958, 112 S.Ct. 418, 116 L.Ed.2d 438 (1991). The district court in *Fieger* found that an attorney facing disciplinary proceedings in Michigan does not have such a definite opportunity to raise constitutional claims.

This court is similarly convinced that under the Sixth Circuit's guidance, Michigan's attorney disciplinary system does not provide a sufficient opportunity for judicial review of constitutional claims so as to justify *Younger* abstention. However, plaintiff's claims are premature at this stage because the Michigan Supreme Court has not even been asked to decide whether to exercise its discretion and review plaintiff's claims. Until such time as the Michigan Supreme Court decides not to review plaintiff's constitutional complaints, plaintiff's claims regarding his various disputes with Michigan's attorney disciplinary system are not ripe for review before this court. *See Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 157 (6th Cir.1992) (" 'Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed.' "); *see also George Fischer Foundry Sys., Inc. v. Adolph H. Hottinger Maschinenbau GmbH*, 55 F.3d 1206, 1210 (6th Cir.1995) (courts cannot issue advisory opinions regarding hypothetical situations). As a result, the court will dismiss plaintiff's claims against defendants Thomas, the ADB, and the AGC because this court lacks subject matter jurisdiction over this matter given the present state of affairs. The court will enter summary judgment as to plaintiff's claims against defendants VanBolt and Bushnell because plaintiff has failed to show that they had any personal involvement in any of the events or decisions relating to the ongoing disciplinary proceedings against him.

## C. Defendants Ronayne and Kasiborski

In their motion to dismiss, defendants Ronayne, Kasiborski, and their law firm contend that plaintiff has failed to state a claim under 42 U.S.C. § 1983 upon which relief can be granted. These defendants contend that

plaintiff's claims against them are frivolous and are only being pursued because of their tangential involvement in the collection efforts initiated by Michigan National based upon the sanctions imposed on plaintiff by the Michigan courts. In response, plaintiff filed a brief filled with virulent attacks and unintelligible legal conclusions.

The court finds that the claims against defendants Ronayne and Kasiborski, Ronayne, and Flaska are frivolous. There is no indication that these defendants acted under color of state law or that they have violated any of plaintiff's constitutional rights so as to support a section 1983 claim. In his response, plaintiff merely contends that summary judgment is inappropriate in cases involving constitutional claims and that the Seventh Amendment blocks all summary judgment motions. There also is no indication that plaintiff has any valid state law cause of action based upon these defendants' proper efforts to collect a valid state court judgment. Finally, there are no facts supporting a claim that they were involved in an over-arching conspiracy to deny plaintiff his right to practice law or even that any such conspiracy would necessarily be actionable. Under these circumstances, the court will grant defendants Ronayne and·Kasiborski, Ronayne, and Flaska's motion to dismiss.

The court also finds that the claims against defendant Chester Kasiborski are without merit. Kasiborski played no role in the Michigan National litigation. In addition, upon his assignment to the ADB panel set to hear the attorney discipline complaints against plaintiff, Kasiborski immediately disqualified himself because of his firm's involvement with Michigan National and its litigation with plaintiff. Plaintiff does not contest any of these facts. On this basis, the court concludes that plaintiff has failed to provide a reasonable basis for recovery against Kasiborski.

### D. Defendant Allan Falk

In his motion to dismiss, defendant Falk contends that he has had no contact with plaintiff since August 18, 1982 when the AGC administrator admonished the plaintiff based upon Falk's attorney discipline com-

plaint. Plaintiff has failed to respond to Falk's motion and has not substantiated any of the claims presented in his complaint. Plaintiff has not identified how he was harmed by Falk, or what role Falk played in the alleged conspiracy against him. Under these circumstances, the court has no alternative but to dismiss the complaint against defendant Falk as frivolous.

### E. Defendant Comerica Bank

Plaintiff is seeking damages from defendant Comerica under 42 U.S.C. § 1983 because $1,457 was debited from his bank account and remitted to Michigan National as a result of a writ of garnishment served on Comerica based upon the sanctions award entered by Judge Breck in state court. Comerica has filed a motion to dismiss plaintiff's claim. In response, plaintiff alleges that the state court judgment is a fraud and that Comerica is liable under section 1983 for relying upon the judgment in garnishing his account.

The court finds that plaintiff's claim against defendant Comerica is an improper attempt to attack a valid state court judgment. This court is not the proper forum for such an attack, and it appears that the action against Comerica was filed for the purpose of retaliating against the proper enforcement of a writ of garnishment. On this basis, plaintiff's section 1983 claim against Comerica Bank is wholly without merit and will be dismissed.

### F. Michigan National Defendants

In his complaint, plaintiff is seeking damages and other relief from defendants Michigan National, Mylod, Vigna, and Bernstein (collectively "the Michigan National defendants"). These defendants have filed a joint motion to dismiss and/or for summary judgment based upon plaintiff's failure to properly plead a claim for malicious prosecution, abuse of process, fraud, and violations of 42 U.S.C. § 1983. In addition, the Michigan National defendants contend that plaintiff's action is barred by res judicata because of the final state court judgment entered in the litigation between plaintiff and these defendants.

**1114**

In his response, plaintiff again attacks the proceedings in state court that resulted in the award of sanctions to Michigan National based upon plaintiff's improper conduct. As to the state law claims, plaintiff states that his complaint does not present a claim for malicious prosecution or abuse of process, but that his fraud claim in his complaint speaks for itself.

The court finds that plaintiff's claims against the Michigan National defendants are frivolous. Plaintiff has provided no factual or legal support to his various claims. Instead, plaintiff has merely reasserted the conclusory allegations stated in his complaint. There is no evidence of any type of fraud, and plaintiff's claim that these defendants violated his Fifth Amendment right against self-incrimination is without merit. Under these circumstances, the court will dismiss plaintiff's complaint against the Michigan National defendants because this court lacks subject matter jurisdiction over claims that are frivolous.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendants Philip Thomas and Michigan Attorney Grievance Commission's motion to dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Anna Diggs Taylor and the United States of America's motion to dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants John Ronayne, III; Chester Kasiborski; and Kasiborski, Ronayne, and Flaska's motion to dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants John Van Bolt and George Bushnell's motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Michigan Attorney Discipline Board's motion to dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Michigan National Corporation, Robert Mylod, David Vigna, and Douglas Bernstein's motion to dismiss and/or for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Frederick Harris's motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Comerica Bank's motion to dismiss is **GRANTED.**

**IT IS FURTHER ORDERED** that defendant Alan Falk's motion to dismiss and/or for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that defendants Lynn Allen, Gerald Poisson, Donald Slavin, and David Breck's motion to dismiss and/or for summary judgment is **GRANTED.**

**SO ORDERED.**

### *JUDGMENT*

This action came before the Court, Honorable Paul V. Gadola, District Judge, presiding, and the issues having been duly considered and a decision having been duly rendered,

**IT IS ORDERED AND ADJUDGED** that the plaintiff take nothing and that the action be dismissed on the merits.